[Cite as *State v. Miller*, 2019-Ohio-4121.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
LOGAN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                    CASE NO. 8-19-02

    v.

PAUL F. MILLER,                         O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Logan County Common Pleas Court
Trial Court No. CR 18 02 0037

Judgment Affirmed

Date of Decision: October 7, 2019

APPEARANCES:

    *Joel M. Spitzer* for Appellant

    *Alice Robinson-Bond* for Appellee

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellant, Paul F. Miller ("Miller"), appeals the December 19, 2018 judgment entry of sentence of the Logan County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from allegations that Miller sexually abused his granddaughter, C.C., from 2013 through 2016, when C.C. was less than 10 years of age, and A.W., an adult friend of Miller's daughter, when A.W. was 20 or 21 years old. (*See* Doc. No. 62). On February 13, 2018, the Logan County Grand Jury indicted Miller as follows: Counts One, Two, Three, Four, and Five of gross sexual imposition in violation of R.C. 2907.05(A)(4), (C)(2), third-degree felonies; Count Six of gross sexual imposition in violation of R.C. 2907.05(A)(1), (C)(1), a fourth-degree felony; and Count Seven of gross sexual imposition in violation of 2907.05(A)(5), (C)(1), a fourth-degree felony. (Doc. No. 1). Miller appeared for arraignment and entered pleas of not guilty to all counts of the indictment on February 16, 2018. (Doc. No. 11).

{¶3} On June 18, 2018, the State filed a motion to dismiss the indictment because "additional charges appear[ed] to be in order," which the trial court granted on June 20, 2018. (Doc. Nos. 46, 47). On July 10, 2018, Miller was indicted under a superseding indictment on: Counts One, Two, Four, Six, and Eight of gross sexual imposition in violation of R.C. 2907.05(A)(4), (C)(2), third-degree felonies; Counts

Three, Five, Seven, and Nine of rape in violation of R.C. 2907.02(A)(1)(b), (B), first-degree felonies; Count Ten of gross sexual imposition in violation of R.C. 2907.05(A)(1), (C)(1), a fourth-degree felony; and Count Eleven of rape in violation of R.C. 2907.02(A)(1)(c), (B), a first-degree felony. (Doc. No. 49). Counts Three, Five, Seven, and Nine included the specification that "the victim was less than ten years of age." (*Id.*). Miller appeared for arraignment on July 13, 2018 and entered pleas of not guilty to the new indictment. (Doc. No. 57).

{¶4} The case proceeded to a jury trial on November 13 and 14, 2018. (Nov. 13, 2018 Tr., Vol. I, at 1); (November 14, 2018 Tr., Vol. III, at 295). On November 14, 2018, the jury found Miller guilty of all of the counts and specifications of the superseding indictment. (Nov. 14, 2018 Tr., Vol. III, at 444-451); (Doc. Nos. 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105). The trial court filed its judgment entry of conviction on November 27, 2018. (Doc. No. 109).

{¶5} The trial court held a sentencing and a sex-offender-registration hearing on December 13, 2018 and sentenced Miller to: life in prison with the possibility of parole after serving 15 years as to Counts Three, Five, and Seven, respectively; 8 years in prison as to Counts Nine and Eleven, respectively; and 18 months in prison as to Count One. (Doc. No. 111); (Dec. 13, 2018 Tr. at 4, 20-21). For purposes of sentencing, the trial court merged Counts Two and Three; Counts Four and Five; Counts Six and Seven; Counts Eight and Nine; and Counts Ten and

Eleven. (*Id.*). The trial court ordered Miller to serve consecutively the prison terms imposed under Counts Three, Five, and Seven. (*Id.*) Further, the prison terms imposed as to Counts One, Nine, and Eleven were ordered to be served *concurrently* to the consecutive terms imposed as to Counts Three, Five, and Seven for an aggregate sentence of life in prison with the possibility of parole after serving 45 years. (*Id.*). The trial court also classified Miller as a Tier III sex offender. (Doc. Nos. 111, 112). The trial court filed its judgment entries of sentence and sex-offender classification on December 19, 2018. (*Id.*); (*Id.*).

{¶6} Miller filed a notice of appeal on January 2, 2019 and raises four assignments of error for our review. (Doc. No. 19). For ease of our discussion, we will address Miller's first and second assignments of error together, followed by his third and fourth assignments of error.

## Assignment of Error No. I

**Defendant-Appellant's conviction for six counts of gross sexual imposition and five counts of rape was not supported by sufficient, credible evidence.**

## Assignment of Error No. II

**Defendant-Appellant's conviction for six counts of gross sexual imposition and five counts of rape was against the manifest weight of the evidence**

{¶7} In his first and second assignments of error, Miller argues that his convictions are based on insufficient evidence and are against the manifest weight

of the evidence.[1]  In particular, in his first assignment of error, Miller contends that his gross-sexual-imposition and rape convictions as to Counts Ten and Eleven (involving the victim, A.W.) are based on insufficient evidence.[2]  In his second assignment of error, Miller specifically argues that his rape convictions under Counts Three, Five, Seven, Nine, and Eleven are against the manifest weight of the evidence.

*Standard of Review*

{¶8} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts."  *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997).  As such, we address each legal concept individually.

{¶9} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt."  *State v. Jenks*, 61 Ohio

---

[1] Notwithstanding the captions of Miller's first and second assignments of error, Miller includes arguments relative to only his rape and gross-sexual-imposition convictions as to Counts Ten and Eleven, respectively, under his first assignment of error and to only his rape convictions under his second assignment of error. Because Miller failed to articulate his reasons (with citations to the authorities, statutes, or parts of the record on which he relies) in support of the contention that his rape and gross-sexual-imposition convictions under Counts One through Nine, respectively, are based on insufficient evidence or in support of contention that his gross-sexual-imposition convictions under Counts One, Two, Four, Six, Eight, and Ten are against the manifest weight of the evidence, we decline to address those arguments. *See State v. Carpenter*, 3d Dist. No. 13-18-16, 2019-Ohio-58, ¶ 31, fn. 5; App.R. 12(A)(2) and 16(A)(7).

[2] Although Miller states (under his first assignment of error) that "no evidence was presented indicating and meeting the time frame alleged in the indictment as to either victim," the balance of Miller's argument challenges the sufficiency of the evidence presented concerning only A.W.  (Appellant's Brief at 4).  Because Miller failed to include reasons, including citations to the authorities, statutes, or parts of the record on which he contends supports his challenge to the sufficiency of the evidence presented concerning C.C., we decline to address those arguments. *See Carpenter* at ¶ 31, fn. 5; App.R. 12(A)(2) and 16(A)(7).

St.3d 259 (1981), paragraph two of the syllabus, superseded by state constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.). *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386.

{¶10} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating

to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Analysis*

{¶11} As an initial matter, although Miller challenges the sufficiency of the evidence supporting the jury's findings of guilt as to the gross-sexual-imposition count under Count Ten of the indictment, we need not address that argument. *See State v. Turner*, 2d Dist. Clark No. 2017-CA-78, 2019-Ohio-144, ¶ 22, citing *State v. Croom*, 7th Dist. Mahoning No. 12 MA 54, 2013-Ohio-5682, ¶ 60-61 and *State v. Zimmer*, 8th Dist. Cuyahoga No. 104946, 2017-Ohio-4440, ¶ 9, quoting *State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 14. "When counts in an indictment are allied offenses, and there is sufficient evidence to support the offense on which the state elects to have the defendant sentenced, the appellate court need not consider the sufficiency [or weight] of the evidence on the count that is subject to merger because any error would be harmless" beyond a reasonable doubt. *Ramos* at ¶ 14, citing *State v. Powell*, 49 Ohio St.3d 255, 263 (1990), *superseded by state constitutional amendment on other grounds*, *Smith*, 80 Ohio St.3d at 102, fn.

4.[3] *See State v. Henderson*, 7th Dist. Mahoning No. 15 MA 0137, 2018-Ohio-5123, ¶ 9 ("Courts have held, in merged offense cases, where there is sufficient evidence supporting the conviction of the state's elected offense for sentencing, it is harmless error if there was insufficient evidence to support the offenses that merged with the elected offense."), citing *State v. Worley*, 8th Dist. Cuyahoga No. 103105, 2016-Ohio-2722, ¶ 23, citing *Powell* at 263 (concluding that "[e]ven if evidence of kidnapping by restraint was insufficient to support conviction, the fact that the kidnapping by removal was based on sufficient evidence and merged with the kidnapping by restraint count means any error with the conviction was harmless beyond a reasonable doubt"), and citing *Croom* at ¶ 60-61 ("The Supreme Court has concluded that, even if there is insufficient evidence to support one count, where that count has been merged with another count, the error in rendering a verdict on that count is harmless beyond a reasonable doubt."), citing *Powell* at 263, and citing *State v. Washington*, 10th Dist. Franklin No. 09AP-424, 2009-Ohio-6665, ¶ 18. *See also Henderson* at ¶ 9 (applying this rationale to manifest-weight-, jury-instruction-, and indictment-related arguments), citing *State v. Springer*, 8th Dist. Cuyahoga

---

[3] The Eighth District Court of Appeals expressed concern with the blind application of this principle and hypothesized that there could be a circumstance under which a challenge to an offense that is merged for purposes of sentencing would not be harmless beyond a reasonable doubt. *See State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 17. However, the Eighth District ultimately determined that it need not reach that issue in *Ramos* after reasoning that, "[f]or purposes of this appeal, our conclusion that the state offered legally sufficient evidence to prove the aggravated murder conviction renders our hypothetical moot." *Id.* at ¶ 18. Similarly, because we ultimately conclude that Miller's rape convictions under Counts Three, Five, Seven, Nine, and Eleven are based on sufficient evidence, we need not reach that issue in this case.

No. 104649, 2017-Ohio-8861, ¶ 15, *Ramos* at ¶ 14, and *State v. Franks*, 8th Dist. Cuyahoga No. 103682, 2016-Ohio-5241, ¶ 18.

{¶12} In this case, error, if any, with respect to the sufficiency or weight of the evidence as to Miller's gross-sexual-imposition charge under Counts Ten is harmless beyond a reasonable doubt because that count was merged with Count Eleven. *See Ramos* at ¶ 13 ("Error, if any, with respect to the sufficiency of the evidence on the felonious assault, domestic violence, and kidnapping counts is harmless because those counts were merged into the life sentence imposed for aggravated murder under Count 2."). More specifically, Miller was not *convicted* of gross sexual imposition as to Count Ten because the trial court merged that offense for purposes of sentencing. *See Turner* at ¶ 22 ("A conviction does not exist where there has been a guilty verdict * * * but no sentence."), quoting *Croom* at ¶ 59, citing *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, ¶ 12. *See also Ramos* at ¶ 16 (noting that "a second line of thought has developed" suggesting that "if a sentence for an allied offense was merged into another sentence, the defendant was not actually 'convicted' of the allied offense"), citing *State v. Obsaint*, 1st Dist. Hamilton No. C-060629, 2007-Ohio-2661, ¶ 24. Indeed, the Supreme Court of Ohio has explicitly stated that a "conviction" requires both a finding of guilt and a sentence. *Ramos* at ¶ 16, citing *State v. Henderson*, 58 Ohio St.2d 171, 178 (1979). For these reasons, we will not and do not address any arguments challenging the

sufficiency of the evidence supporting Millers gross-sexual-imposition charge under Count Ten. *See Ramos* at ¶ 13, 18.

{¶13} Therefore, we begin by addressing Miller's sufficiency-of-the-evidence argument as it relates to his rape conviction under Count Eleven of the indictment. *See State v. Velez*, 3d Dist. Putnam No. 12-13-10, 2014-Ohio-1788, ¶ 68, citing *State v. Wimmer*, 3d Dist. Marion No. 9-98-46, 1999 WL 355190, *1 (Mar. 26, 1999).

{¶14} Under his first assignment of error, Miller challenges *only* the sufficiency of the evidence supporting his gross-sexual-imposition conviction under Count Ten. Although Miller contends that the State did not present sufficient evidence that A.W. was substantially impaired or that Miller knew that she was substantially impaired, Miller applies his argument to just his gross-sexual-imposition conviction.[4] Importantly, in presenting his argument, Miller references only Ohio's gross-sexual-imposition statute and argues that "Mr. Miller's knowledge of [A.W.'s] mental state is an essential element of the offense of *gross sexual imposition*."[5] (Emphasis added.) (Appellant's Brief at 3-4). Moreover, in sum, Miller contends, "Simply because [A.W.'s] recollection of the night's events

---

[4] Miller was convicted of rape under R.C. 2907.02(A)(1)(c)—the "substantial-impairment" subsection—and gross sexual imposition under R.C. 2907.05(A)(1)—the "force-or-threat-of-force" subsection.
[5] Miller also references Ohio's sexual-battery statute in the body of his argument. (*See* Appellant's Brief at 5). However, because Miller was not convicted of sexual battery, we will disregard any reference to that statute.

is better than that of Mr. Miller's does not mean the State established proof beyond a reasonable doubt that Mr. Miller committed *gross sexual imposition*." (Emphasis added.) (*Id.* at 6). In other words, Miller failed to present *any* argument as to how his rape conviction under Count Eleven is based on insufficient evidence.

**{¶15}** "[A] defendant has the burden of affirmatively demonstrating the error of the trial court on appeal." *State v. Stelzer*, 9th Dist. Summit No. 23174, 2006-Ohio-6912, ¶ 7, citing *State v. Cook*, 9th Dist. Summit No. 20675, 2002-Ohio-2646, ¶ 27. "Moreover, '[i]f an argument exists that can support this assignment of error, it is not this court's duty to root it out.'" *Id.*, quoting *Cook* at ¶ 27. "App.R. 12(A)(2) provides that an appellate court 'may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A).'" *State v. Jackson*, 10th Dist. Franklin No. 14AP-670, 2015-Ohio-3322, ¶ 11, quoting App.R. 12(A)(2). "Additionally, App.R. 16(A)(7) requires that an appellant's brief include '[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies.'" *Id.*, quoting App.R. 16(A)(7). Not only did Miller fail to include an argument under his first assignment of error regarding how his rape conviction under Count Eleven is based

on insufficient evidence, but he failed to provide citations to the authorities, statutes, and parts of the record that support his argument. Accordingly, we decline to address the sufficiency-of-the-evidence argument raised by Miller under his first assignment of error.[6] *See State v. Carpenter*, 3d Dist. Seneca No. 13-18-16, 2019-Ohio-58, ¶ 31, fn. 5.

{¶16} Thus, we turn to Miller's argument that his rape convictions under Counts Three, Five, Seven, Nine, and Eleven are against the manifest weight of the evidence. *See Velez*, 2014-Ohio-1788, at ¶ 76. On appeal, Miller argues that his rape convictions under Counts Three, Five, Seven, Nine, and Eleven are against the manifest weight of the evidence because "the evidence did not establish that cunnilingus (rape) had actually occurred with [C.C.]" and because A.W. "only briefly says Mr. Miller was licking her vagina but did not elaborate if it was inside of her vagina or simply around the vagina." (Appellant's Brief at 8).

{¶17} Even though Miller asserts that he is challenging the weight of the evidence supporting his convictions as pronounced in his second assignment of error, his argument pertains only to the sufficiency of the evidence supporting those convictions. Therefore, our discussion is limited to addressing the sufficiency of the evidence supporting those convictions. *Accord State v. Yoder*, 9th Dist. Wayne

---

[6] Nevertheless, we address the "substantial-impairment" and "sexual-conduct" elements of Miller's rape conviction under R.C. 2907.02(A)(1)(c)—as alleged in Count Eleven—in Miller's second and third assignments of error. There, we ultimately conclude that Miller's rape conviction under R.C. 2907.02(A)(1)(c) is based on sufficient evidence.

No. 15AP0017, 2016-Ohio-7428, ¶ 23 ("Because Mr. Yoder only presented a sufficiency argument, we decline to conduct a manifest weight analysis on his behalf."), citing *State v. Schmitz*, 9th Dist. Lorain Nos. 11CA010043 and 11CA010044, 2012-Ohio-2979, ¶ 36 and App.R. 16(A)(7). *See State v. Tabassum*, 9th Dist. Summit No. 25568, 2011-Ohio-6790, ¶ 5 ("Although, in the statement of his first assignment of error, Tabassum raises the issue of manifest weight, his arguments pertain only to the sufficiency of the evidence, and we limit our discussion accordingly."), citing App.R. 12(A)(2) and 16(A)(7). *See also State v. Dahms*, 3d Dist. Seneca No. 13-16-16, 2017-Ohio-4221, ¶ 78 (noting that "sufficiency of the evidence and manifest weight of the evidence are *different* legal concepts"), citing *Thompkins*, 78 Ohio St.3d at 389.

**{¶18}** Miller was convicted of three counts of rape in violation of R.C. 2907.02(A)(1)(b) and one count of rape in violation of 2907.02(A)(1)(c). The offense of rape is codified under R.C. 2907.02, which provides, in its pertinent part:

> (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
>
> * * *
>
> (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
>
> (c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *, and the

-13-

offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *.

R.C. 2907.02(A)(1)(b), (c).[7]

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

{¶19} In order to prove rape under R.C. 2907.02(A)(1)(b), the State was required to prove that: (1) Miller engaged in sexual conduct with C.C.; (2) that C.C. is not his spouse; and (3) that C.C. was less than thirteen years of age, whether or not Miller knew C.C.'s age at the time of the offense. *See State v. Jones*, 2d Dist. Montgomery No. 26289, 2015-Ohio-4116, ¶ 42. And, the relevant inquiries regarding Miller's rape conviction under R.C. 2907.01(A)(1)(c) are whether the evidence, when viewed in a light most favorable to the prosecution, is such that any trier of fact could have found that: (1) Miller engaged in sexual conduct with A.W.; (2) Miller and A.W. are not married to each other; and (3) A.W.'s ability to resist or consent was substantially impaired because of a mental or physical condition, and

---

[7] We are applying the version of the Revised Code in effect at the time Miller committed the offenses.

Miller knew or had reasonable cause to believe that A.W.'s ability to resist or consent was substantially impaired because of that mental or physical condition. *See State v. Stevens*, 3d Dist. Allen No. 1-14-58, 2016-Ohio-446, ¶ 11; *In re T.N.*, 3d Dist. Marion No. 9-15-36, 2016-Ohio-5774, ¶ 55.

**{¶20}** On appeal, Miller argues only that there is insufficient evidence that he engaged in sexual conduct with C.C. and A.W. Because it is the sole element that Miller challenges on appeal, we will review the sufficiency of the evidence supporting only whether he engaged in sexual conduct with C.C. and A.W. "Sexual conduct," is defined, in relevant part, as "cunnilingus between persons regardless of sex * * *." R.C. 2907.01(A).

**{¶21}** Miller contends that he did not engage in cunnilingus with either victim because the State did not present any evidence that he "licked * * * the actual inside of the vagina." (Appellant's Brief at 8). Miller's argument lacks merit. The statute does not define cunnilingus. However, this court has defined cunnilingus as "a sexual act committed with the mouth and the female sexual organ." *State v. Ramirez*, 98 Ohio App.3d 388, 393 (3d Dist.1994), citing *State v. Bailey*, 78 Ohio App.3d 394, 395 (1st Dist.1992). "Penetration is not required to commit cunnilingus. Rather, the act of cunnilingus is completed by the placing of one's mouth on the female's genitals." *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, ¶ 86.

{¶22} In this case, C.C. testified that (from 2012-2016) Miller performed (on multiple occasions) the act of cunnilingus. (Nov. 13, 2018 Tr., Vol. II, at 243-248). That is, she specifically testified that Miller placed his mouth on her vagina. (*See id.*). Similarly, A.W. testified that Miller performed the act of cunnilingus. (Nov. 14, 2018 Tr., Vol. III, at 305). She specified that she "passed out on the couch" and woke up to Miller "licking [her] on [her] vagina." (*Id.*). Therefore, we conclude that the State presented sufficient evidence that Miller engaged in sexual conduct. *See State v. Coleman*, 6th Dist. Lucas No. L-15-1056, 2016-Ohio-7335, ¶ 63. Thus, Miller's rape convictions under R.C. 2907.02(A)(1)(b) and (c) are based on sufficient evidence.

{¶23} Miller's first and second assignments of error are overruled.

### Assignment of Error No. III

**Defendant-Appellant was denied the right to effective assistance of counsel and a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution and the Ohio Constitution, Article I, Section 10.**

{¶24} In his third assignment of error, Miller argues that his trial counsel was ineffective. In particular, he contends that his trial counsel was ineffective for failing to: (1) move for acquittal at the close of the State's evidence; (2) file any pretrial motions—namely a motion to sever the superseding indictment or a motion to suppress the video interview of C.C.; (3) object to testimony; and (4) vigorously cross-examine the State's expert witnesses.

-16-

*Standard of Review*

**{¶25}** A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976), *vacated in part on other grounds*, 438 U.S. 910, 98 S.Ct. 3135 (1978).

**{¶26}** "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 3d Dist. Allen No. 1-13-04, 2014-Ohio-259, ¶ 48, quoting

*Bradley* at 142, citing *Strickland* at 691. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142 and citing *Strickland* at 694.

*Analysis*

**{¶27}** First, Miller contends that his trial counsel was ineffective for failing to move for a Crim.R. 29 judgment of acquittal. Miller's argument is without merit because Miller's trial counsel sought a judgment of acquittal at the close of the State's evidence (and he renewed that motion at the close of all evidence), which the trial court denied. (*See* Nov. 14, 2018 Tr., Vol. III, at 333-342, 380). Even if we frame Miller's argument to reflect an argument that his trial counsel was ineffective for failing to *articulate* an argument in support of his Crim.R. 29 motion for acquittal, the result is the same. Reframed, Miller argues that (had his trial counsel articulated an argument in support of his Crim.R. 29(A) motion) he would not have been convicted of gross sexual imposition under Count Ten or rape under Count Eleven of the superseding indictment.[8]

---

[8] Miller offers no argument (as he is required to do) in support of his contention that his Crim.R. 29 motion for acquittal would have been successful as to his gross-sexual-imposition and rape convictions under Counts One, Two, Three, Four, Five, Six, Seven, Eight, or Nine of the superseding indictment. *See State v. Fluttrow*, 3d Dist. Putnam No. 12-18-03, 2018-Ohio-3613, ¶ 30; App.R. 16. Because Miller failed to satisfy his burden of demonstrating that he was prejudiced by his trial counsel's alleged failure to articulate an argument in support of his Crim.R. 29 motion as to those convictions, we decline to root out any possible argument for him. *Id.*; *Id.*; App.R. 12.

**{¶28}** "Crim.R. 29 provides for an entry of a judgment of acquittal if the evidence is insufficient to sustain a conviction." *State v. Cunningham*, 6th Dist. Lucas No. L-16-1248, 2018-Ohio-663, ¶ 34.

> "However, a court shall not order an entry of judgment of acquittal under Crim.R. 29(A) if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."

*State v. Euton*, 3d Dist. Auglaize No. 2-06-35, 2007-Ohio-6704, ¶ 32, citing *State v. Bridgeman*, 55 Ohio St.2d 261 (1987), syllabus. "'An appellate court reviews a denial of a Crim.R. 29 motion for acquittal using the same standard that is used to review a sufficiency of the evidence claim.'" *Cunningham* at ¶ 34, quoting *State v. Reyes*, 6th Dist. Wood No. WD-03-059, 2005-Ohio-2100, ¶ 21, citing *Carter*, 72 Ohio St.3d at 553, and citing *State v. Jones*, 6th Dist. Lucas No. L-08-1001, 2009-Ohio-6501, ¶ 32. *See also Euton* at ¶ 32 ("A motion for acquittal tests the sufficiency of the evidence."), citing *State v. Miley*, 114 Ohio App.3d 738, 742 (4th Dist.1996).

**{¶29}** Accordingly, to resolve Miller's ineffective-assistance-of-trial-counsel argument, we must apply the sufficiency-of-the-evidence analysis that we discussed under Miller's first and second assignments of error to determine whether he was prejudiced by his trial counsel's failure to articulate an argument in support of his Crim.R. 29 judgment of acquittal as to Counts Ten and Eleven. As to Count Ten, Miller contends that his Crim.R. 29 motion would have been successful

because the State did not present sufficient evidence in support of his gross-sexual-imposition conviction.

**{¶30}** R.C. 2907.05 sets forth the offense of gross sexual imposition and provides, in relevant part:

> (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
>
> (1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force.

R.C. 2907.05(A)(1). To prove the offense of gross sexual imposition under R.C. 2907.05(A)(1), the State must prove that the defendant had sexual contact with a person, not the defendant's spouse, and that the offender purposely compelled the victim to submit to the sexual contact by force or threat of force. *See State v. Wine*, 3d Dist. Auglaize No. 2-12-01, 2012-Ohio-2837, ¶ 39-40.

**{¶31}** Because they are the only elements that Miller contends were insufficient (and thus that his Crim.R. 29 motion would have been successful), we will address solely whether the State presented sufficient evidence that (1) A.W. was not Miller's spouse and (2) that Miller purposely compelled A.W. to submit to sexual contact by *force or threat of force*. Notwithstanding the State's failure to affirmatively ask the victim whether she was the spouse of Miller, the State nevertheless presented sufficient evidence that A.W. was *not* Miller's spouse. *See*

*State v. Muller*, 3d Dist. Defiance No. 4-11-09, 2012-Ohio-3530, ¶ 82 ("'When the state fails to affirmatively ask the victim whether she was the spouse of the offender, [a trier of fact may] infer from the testimony or circumstances, if sufficient, that a defendant and his victim are not married.'"), quoting *State v. Rainey*, 2d Dist. Montgomery No. 23070, 2009-Ohio-5873, ¶ 30, citing *State v. Brown*, 8th Dist. Cuyahoga No. 86577, 2006-Ohio-4584, ¶ 13. A.W. testified that Miller is her friend's dad, but she did not "know him well or anything * * *." (Nov. 14, 2018 Tr., Vol. III, at 317). Further, Detective Dwight Salyer ("Detective Salyer") of the Bellefontaine Police Department testified that he investigated A.W.'s allegations. (Nov. 14, 2018 Tr., Vol. III, at 327). According to Detective Salyer, when he spoke with Miller "about that incident, he told [Detective Salyer] he didn't know who [A.W.] was * * *." (*Id.*). On rebuttal, Detective Salyer confirmed that Miller told him that he did not know A.W. (*Id.* at 376). Based on this evidence, reasonable minds could reach different conclusions as to whether the State proved beyond a reasonable doubt that A.W. and Miller were not married to each other. *See Muller* at ¶ 82.

{¶32} The State also presented sufficient evidence that Miller purposely compelled A.W. to submit to the sexual contact by *force or threat of force*. In addressing the force-or-threat-of-force language under Ohio's rape statute,

> [t]he Supreme Court of Ohio has further clarified that "[a] defendant
> purposely compels another to submit to sexual conduct by force or

> threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit. A threat of force can be inferred from the circumstances surrounding sexual conduct[.]"

*State v. Henry*, 3d Dist. Seneca No. 13-08-10, 2009-Ohio-3535, ¶ 26 (applying the Supreme Court of Ohio's discussion of the force-or-threat-of-force element to Ohio's gross-sexual-imposition statute), quoting *State v. Schaim*, 65 Ohio St.3d 51 (1992), paragraph one of the syllabus. Indeed, "'[f]orce' is defined as '*any* violence, compulsion, or constraint physically exerted by any means upon or against a person or thing.'" (Emphasis sic.) *Euton*, 2007-Ohio-6704, at ¶ 60 (Preston, J., concurring in part and dissenting in part), quoting R.C. 2901.01(A)(1). *See State v. Stevens*, 3d Dist. No. 1-14-58, 2016-Ohio-446, ¶ 18. *See also* R.C. 2907.05(D) ("A victim need not prove physical resistance" for the offender to be guilty of gross sexual imposition). "'[T]he key inquiry for determining whether the State presented sufficient evidence [of] the element of force is whether (based on the totality of the circumstances) the "victim's will was overcome by fear or duress."'" *Stevens* at ¶ 20, quoting *Wine*, 2012-Ohio-2837, at ¶ 40, quoting *In re Forbess*, 3d Dist. Auglaize No. 2-09-20, 2010-Ohio-2826, ¶ 40, citing *State v. Heft*, 3d Dist. Logan No. 8-09-08, 2009-Ohio-5908, ¶ 88, citing *State v. Eskridge*, 38 Ohio St.3d 56, 58-59 (1988). *See id.* at ¶ 21, quoting *State v. Runyons*, 3d Dist. Union No. 14-91-30, 1992 WL 136196, *2 (June 9, 1992).

**{¶33}** In this case, (as we previously outlined) A.W. testified that she "passed out on the couch," woke up, and saw Miller "in between [her] legs and [her] pants and underwear down and him licking [her] on [her] vagina." (Nov. 14, 2018 Tr., Vol. III, at 305). She testified that, when she awoke, she "was confused," "was thinking * * * what the heck," and was "looking around to see if [she] saw [her friend] or anything [but she] didn't see anybody" because "[t]he room was dark." (*Id.*). She sat up and Miller "sat beside [her] and pulled out his penis and * * * put [her] hand on it." (*Id.* at 305-306). She further testified that she could not recall "if he * * * said it or just gestured it, but he wanted [her] to put it in [her] mouth." (*Id.* at 306). At that point, A.W. asked Miller to stop, and he did. (*Id.*).

**{¶34}** Based on our review of the totality of the circumstances of this case, the State presented evidence beyond a subtle or psychological force—that is, the State presented evidence such that reasonable minds could reach different conclusions as to whether the force element was proven beyond a reasonable doubt. Specifically, A.W. testified that Miller removed her pants and underwear.[9] *See Stevens* at ¶ 23 (noting that removing a victim's pants and underwear constitutes an act of compulsion and constraint, which is independent of the force inherent in the crime itself), citing *Eskridge* at 58. *See also Wine* at ¶ 48 (noting that "'the statute

---

[9] Although this court has declined to adopt a "reduced level of force for sleeping victims" standard, the evidence presented by the State in this case exceeds that standard. *See State v. Wine*, 3d Dist. Auglaize No. 2-12-01, 2012-Ohio-2837, ¶ 49.

requires that some amount of force must be proven beyond the force inherent in the crime itself'"), quoting *State v. Dye*, 82 Ohio St.3d 323, 327 (1998). Disoriented and searching for her friend, Miller then took A.W.'s hand and placed it on his penis. *See State v. Kushlan*, 8th Dist. Cuyahoga No. 91383, 2009-Ohio-2253, ¶ 25; *Euton* at ¶ 60 (Preston, J., dissenting) (concluding that the trial court properly denied Euton's Crim.R. 29 motion because "reasonable minds [could] differ on whether [the victim's] fear [was] 'any' compulsion under R.C. 2901.01(A)(1)" since the victim "was frightened and froze up for a few moments before leaving the room"), citing *State v. Bridgeman*, 55 Ohio St.2d 261 (1978), syllabus. Likewise, the jury could infer from A.W.'s testimony that, because she requested Miller to "stop," Miller was compelling A.W. to submit to sexual contact. *See State v. Glover*, 8th Dist. Cuyahoga No. 83341, 2004-Ohio-4482, ¶ 22.

{¶35} Accordingly, based on the totality of the circumstances, we conclude that the evidence presented by the State was enough for a reasonable trier of fact to find that "any" compulsion was exerted. *See Stevens* at ¶ 23, citing *Wine* at ¶ 47, citing *Eskridge* at 58-59 and *Schaim* at 55; *Euton* at ¶ 60 (Preston, J., dissenting). Therefore, Miller cannot demonstrate that (had his trial counsel articulated an argument in support of his Crim.R. 29 motion as to Count Ten), it would have had a reasonable likelihood of success.

{¶36} As to Count Eleven, despite our conclusion under Miller's first and second assignments of error (that his rape conviction under that count is based on sufficient evidence), Miller now challenges the sufficiency of the evidence of a different element of that offense. In particular, Miller argues that there was a reasonable probability of success that (had his trial counsel articulated an argument in support of his Crim.R. 29 motion as to Count Eleven), the Crim.R. 29 motion would have been granted because there was insufficient evidence that Miller knew that A.W.'s "ability to appraise the nature of or control her own conduct was substantially impaired." (Appellant's Brief at 10).

{¶37} As we previously noted, Miller was convicted of rape in violation of R.C. 2907.02(A)(1)(c) under Count Eleven of the superseding indictment. R.C. 2907.02(A)(1)(c) provides, in its relevant part, that

> [n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * "[t]he other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * * and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *.

Although Ohio's criminal code does not define "substantial impairment," "the courts of appeals have 'concluded that sleeping is a "physical condition" that substantially impairs a victim's ability to resist for purposes of rape in violation of R.C. 2907.02(A)(1)(c)." *Stevens* at ¶ 13, quoting *Wine* at ¶ 50, citing *State v.*

*Graves*, 8th Dist. Cuyahoga No. 88845, 2007-Ohio-5430, ¶ 22, *State v. Wright*, 9th Dist. Medina No. 03CA0057-M, 2004-Ohio-603, ¶ 6, and *State v. H.H.*, 10th Dist. Franklin No. 10AP-1126, 2011-Ohio-6660, ¶ 10. *See also State v. Anderson*, 6th Dist. Wood No. WD-04-035, 2005-Ohio-534, ¶ 41 ("A jury can reasonably conclude that the defendant knew the victim was substantially impaired and unable to object to the defendant's conduct if there was evidence that the victim was in a state of deep sleep or drunkenness.").

{¶38} As we previously addressed, A.W. unequivocally testified that she "passed out" and awoke to Miller "in between [her] legs and [her] pants and underwear down and him licking [her] on [her] vagina." (Nov. 14, 2018 Tr., Vol. III, at 305). Accordingly, that evidence is such that reasonable minds could reach a different conclusion as to whether the State proved beyond a reasonable doubt that Miller knew or had reasonable cause to believe that A.W.'s ability to resist or consent was substantially impaired because of a physical condition. *See Stevens* at ¶ 13. Therefore, a more artfully articulated Crim.R. 29 motion as to Count Eleven would not have had a reasonable probability of success. Thus, Miller's trial counsel was not ineffective for failing to articulate an argument in support of his Crim.R. 29 motion as to Counts Ten and Eleven.

{¶39} Miller further argues under his third assignment of error that his trial counsel was ineffective for failing to file a motion to sever the superseding

indictment or a motion to suppress the video interview of C.C. "The failure to file a motion is not per se ineffective assistance of counsel." *State v. Costell*, 3d Dist. Union No. 14-15-11, 2016-Ohio-3386, ¶ 161, citing *State v. Schlosser*, 3d Dist. Union No. 14-10-30, 2011-Ohio-4183, ¶ 34, citing *In re Smith*, 3d Dist. Hancock No. 5-01-34, 2002 WL 255126, *6 (Feb. 22, 2002). "'Without proving that trial counsel was deficient for failing to make certain motions and that those motions had a reasonable probability of success, the ineffective assistance of counsel claim fails.'" *Id.*, quoting *Schlosser* at ¶ 34. However, Miller failed to demonstrate how his trial counsel was deficient for failing to file either of those pretrial motions or that such motions would have been successful. Indeed, Miller made no argument relative to whether either of those motions would have had a reasonable probability of success, and we decline to root out any possible argument. *Id.*, citing *State v. Raber*, 189 Ohio App.3d 396, 2010-Ohio-4066, ¶ 30 ("[I]f an argument exists that can support [an] assignment of error, it is not this [c]ourt's duty to root it out."). *See also* App.R. 12(A)(2) and 16(A)(7).

{¶40} Next, Miller contends that his trial counsel was ineffective for not objecting to testimony to the testimony of Tabitha C. ("Tabitha"). "The 'failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.'" *Liles*, 2014-Ohio-259, at ¶ 49, quoting *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶ 139, citing *State v. Holloway*, 38 Ohio St.3d 239, 244

(1988). "To prevail on such a claim, a defendant must first show that there was a substantial violation of any of defense counsel's essential duties to his client and, second, that he was materially prejudiced by counsel's ineffectiveness." *Holloway* at 244, citing *Lytle*, 48 Ohio St.3d at 396-397 and *Strickland*, 466 U.S. at 668. "Because 'objections tend to disrupt the flow of a trial, and are considered technical and bothersome by the fact-finder,' competent counsel may reasonably hesitate to object in the jury's presence." *State v. Campbell*, 69 Ohio St.3d 38, 53 (1994), quoting Jacobs, *Ohio Evidence*, at iii-iv (1989).

{¶41} In particular, Miller takes issue with Tabitha's testimony on the basis that it was impermissible hearsay because "the witness [was] relaying what the minor child had told her." (Appellant's Brief at 10-11). "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). "The hearsay rule does not apply, however, when an out-of-court statement is offered for a purpose other than the truth of the matter * * * asserted." *State v. Smith*, 9th Dist. Summit No. 26159, 2012-Ohio-4436, ¶ 13, citing *State v. Lewis*, 22 Ohio St.2d 125, 132 (1970). "One such situation is when an out-of-court statement is introduced to explain the subsequent actions taken by witnesses * * *." *Id.*, citing *State v. Thomas*, 61 Ohio St.2d 223, 232 (1980).

{¶42} After reviewing the totality of Tabitha's testimony, we see no testimony conveying a hearsay statement. Tabitha's testimony does not concern any specific statement made by C.C.; rather, her testimony reflects that C.C. made a statement to her, when the statement was made, and the steps that Tabitha took as a result of the statement. *See State v. Hoseclaw*, 3d Dist. Allen No. 1-12-31, 2013-Ohio-3486, ¶ 39. Thus, because Tabitha's testimony does not reflect *any* hearsay statements, Miller's trial counsel was not deficient for failing to object to any of her testimony.

{¶43} Similarly, Miller contends that his trial counsel should have objected to Tabitha's in-court identification of Miller because Tabitha did not have "first hand knowledge of the allegations." (Appellant's Brief at 11). Miller's argument is without merit. Tabitha was asked how she knows of Miller's identity and whether she knew what "Miller looks like," to which she responded that she did. (Nov. 13, 2018 Tr., Vol. II, at 173, 176-177). *See State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, ¶ 39 (concluding that the identification of an individual based on the witness's "personal knowledge and experience" is not hearsay); *State v. Robertson*, 5th Dist. Delaware No. 95CAA05036, 1996 WL 251825, *2 (Apr. 15, 1996) (concluding that the witness's in-court identification of Robertson was admissible because it was "merely a response to his personal knowledge and ability to identify [Robertson]"). In other words, Tabitha's statement was not offered to

establish that Miller was the one who committed the acts against C.C. *See Smith* at ¶ 14. Accordingly, because Tabitha's identification of Miller was not offered *for the truth of the matter asserted*, the hearsay rule does not apply, and Miller's trial counsel was not ineffective for failing to object to it. *Id.*

**{¶44}** Finally, Miller contends that his trial counsel was ineffective for failing to "vigorously" cross-examine the State's expert witnesses. Specifically, Miller contends that his trial counsel "merely asked seven insignificant questions of the nurse where there was an opportune moment to cast doubt on the victim's story" "and the same exact line of insignificant questioning of the second 'expert' witness." (Appellant's Brief at 11, citing Nov. 13, 2018 Tr., Vol. II, at 222-224, 232-233).

**{¶45}** "It is well settled that the scope of cross-examination is considered a trial strategy, and debatable trial tactics do not establish ineffective assistance." *State v. Alvarez*, 3d Dist. Defiance No. 4-08-02, 2008-Ohio-5189, ¶ 32, citing State v. *Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101, citing *State v. Hoffner*, 102 Ohio St.3d 358, 2004-Ohio-3430, ¶ 45; *State v. Campbell*, 90 Ohio St.3d 320, 339 (2000). Miller's trial counsel may have decided to refrain from "vigorously" cross-examining the State's witnesses because such cross-examination might have reemphasized C.C.'s allegations and bolstered the State's argument. *Accord Alvarez* at ¶ 32. Likewise, aside from his blanket statement that a more "vigorous" cross-examination of the State's witnesses would have "cast doubt on the victim's

story," Miller advanced *no* argument (as he is required to do) that there is a reasonable probability that the outcome of his trial would have been different based on that argument. Thus, we conclude that Miller's trial counsel's considerations are trial strategy and do not constitute ineffective assistance of counsel. *See id.*

{¶46} For these reasons, Miller's third assignment of error is overruled.

## Assignment of Error No. IV

**Defendant-Appellant was deprived of his rights to due process and a fair trial under the federal and state constitutions by the cumulative effect of the numerous errors in this case.**

{¶47} In his fourth assignment of error, Miller argues that the cumulative effect of the trial court's errors denied him a fair trial. Specifically, Miller argues that the cumulative effect of the errors that he alleged in his first, second, and third assignments of error deprived him of a fair trial.

### *Standard of Review*

{¶48} "Under [the] doctrine of cumulative error, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial court error does not individually constitute cause for reversal." *State v. Spencer*, 3d Dist. Marion No. 9-13-50, 2015-Ohio-52, ¶ 83, citing *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, ¶ 222-224 and *State v. Garner*, 74 Ohio St.3d 49, 64 (1995). "To find cumulative error, a court must first find multiple errors committed at trial and

determine that there is a reasonable probability that the outcome below would have been different but for the combination of the harmless errors." *State v. Stober*, 3d Dist. Putnam No. 12-13-13, 2014-Ohio-5629, ¶ 15, quoting *In re J.M.*, 3d. Dist. Putnam No. 12-11-06, 2012-Ohio-1467, ¶ 36.

*Analysis*

**{¶49}** Because we found no error as alleged by Miller in his first, second, or third assignments of error, the doctrine of cumulative error does not apply. *State v. Bertuzzi*, 3d Dist. Marion No. 9-13-12, 2014-Ohio-5093, ¶ 110.

**{¶50}** Miller's fourth assignment of error is overruled.

**{¶51}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**